UNITED STATES of America, Plaintiff-Appellee,

v.

Joe Frederick JEFFERSON, Defendant-Appellant.

No. 76–1885
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 8, 1978.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Douglas Tinker (Court-appointed), A. Deniz Tor, Corpus Christi, Tex., for defendant-appellant.

J. A. Canales, U. S. Atty., Mary L. Sinderson, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., Robert A. Berg, Asst. U. S. Atty., Corpus Christi, Tex., for plaintiff-appellee.

Before GOLDBERG, RONEY and FAY, Circuit Judges.

RONEY, Circuit Judge:

At the start of this criminal trial, the district court denied defense counsel's request to question the jurors regarding any jury service they may have had in the seven week interim period since they were first designated to sit on this case. Under the holding in our recent case of *United States v. Mutchler*, 559 F.2d 955 (5th Cir. 1977), this inquiry should have been made. Whether or not this was reversible error depends upon whether any of the designated jurors had, in fact, sat on a similar case or one involving the same witnesses during the period between selection and trial. We therefore remand the case to the district court for a determination of the controlling facts.

### I. *Facts*

Defendant Joe Frederick Jefferson and his co-defendant, William Glasgow, were arrested at the Falfurrias, Texas, border patrol checkpoint, as they traveled in tandem in two separate automobiles. A search of the vehicles by border patrol agents revealed 370 pounds of marijuana in the trunk of Glasgow's car and some marijuana debris in the vehicle Jefferson was driving. Jefferson and Glasgow were charged with possession with intent to distribute the 370 pounds of marijuana. 21 U.S.C.A. § 841(a)(1); 18 U.S.C.A. § 2.

Jury selection for Jefferson's trial, which was severed from that of Glasgow, began on December 1, 1975. In the voir dire of the entire jury panel, defense counsel did not request that the trial judge examine the prospective jurors regarding prior jury service. Fourteen jurors were selected and instructed to return for trial on January 19, 1976. On that day, defense counsel requested further voir dire of the jurors previously selected regarding any jury service in the seven week interim period between jury selection and the commencement of defendant's trial. The district court denied the request, suggesting that the information sought was readily available in the clerk's office. The jury found defendant guilty. He appealed on the sole ground that the requested inquiry should have been made.

### II. *The Applicability of United States v. Mutchler*

In some districts, repeat jury service is inevitable because of the small population base from which jury panels are selected. There is nothing wrong with this practice. The rule in this Circuit, and indeed in all of the federal courts, is that prior jury service during the same term of court in another criminal case is not, standing alone, a sufficient basis to support a challenge for cause. If counsel can show specific evidence that the prior service biased a particular juror, that juror will be excused for cause. *United States v. Riebschlaeger*, 528 F.2d 1031, 1032–1033 (5th Cir.) (citing cases from other Circuits), *cert. denied*, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976).

In two early cases, this Court did not find an abuse of discretion where the district judge had declined to ask potential jurors if they had previously served on a jury, on the ground that such an inquiry was irrelevant. *Bellard v. United States*, 356 F.2d 437, 439 (5th Cir.), *cert. denied*, 385 U.S. 856, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966); *Spells v. United States*, 263 F.2d 609, 610–612 (5th Cir.), *cert. denied*, 360 U.S. 920, 79 S.Ct. 1439, 3 L.Ed.2d 1535 (1959). The references to "relevance" indicate that these decisions apparently were predicated on the fact that prior service was not a basis for a challenge for cause.

In *United States v. Montelongo*, 507 F.2d 639, 641 (5th Cir. 1975), we recognized that prior service is often considered by counsel when exercising peremptory challenges. We therefore held that counsel is *entitled* to develop on voir dire some information regarding the nature and extent of prospective jurors' prior jury service. We reaffirmed *Montelongo* in *United States v. Ochoa*, 543 F.2d 564, 566 (5th Cir. 1976), and also in *United States v. Mutchler, supra*, 559 F.2d at 957.

In *United States v. Mutchler, supra*, we were faced for the first time with the issue of *interim* jury service, that is, jury service during the period between selection as a juror in defendant's trial and the commencement of defendant's trial. In *Mutchler*, a marijuana case, the defendant had used all ten of his peremptory challenges at voir dire to exclude every prospective juror with prior jury service in narcotics cases. In the nine days between selection and trial, however, nine of the twelve jurors sat on one or more similar drug cases. The district judge asked the jurors collectively whether the interim service had biased them, and after a negative reply, denied the defense motion to quash the panel. We reversed.

The Court reasoned that permitting designated jurors to sit on similar prosecutions in the interim between selection and trial deprives defense counsel's prior peremptory challenges of meaning by depriving "counsel of 'necessary information' upon which to base an effective exercise of peremptory challenges." 559 F.2d at 958. We therefore prohibited interim jury service, holding that "once a jury is struck, the designates cannot serve prior to trial in other cases similar in fact and in legal issue or in cases in which the same government witnesses testify." *Id.* at 960.

The case *sub judice* differs somewhat from *Mutchler*. Counsel for Jefferson did not inquire into prior jury service at voir dire when the jury was selected, nor does it appear from the record that he exercised any peremptory challenges to exclude potential jurors with prior service. Despite *Mutchler's* rationale based on the right to exercise peremptory challenges, we do not find Jefferson's counsel's failure to exercise those challenges at voir dire to be material in this case.

 *Mutchler* establishes that jurors with interim service in similar cases may be challenged for *cause*. The defendant there was described as having exhausted his peremptory challenges, yet this Court reversed the conviction, holding that the trial court should have granted the motion to quash the panel, which in effect would allow a challenge for cause. Also, the *Mutchler* opinion indicates one remedy for the problem created by interim jury service would be a flat prohibition on service by jurors in similar cases once they are selected. That prohibition would not turn on the availability of peremptory challenges. The suggestion implies that a challenge for cause is at stake. The reason for *Mutchler's* hard and fast rule goes beyond the mere burden on the right to make an informed peremptory challenge at voir dire as to prior service. Interim service is more proximate in time and so creates a heightened danger of prejudice, which is especially great when the offenses are similar or the witnesses the same, as they were not in *Riebschlaeger*. Jury service prior to selection is sufficiently different from service after selection that a waiver of the right to challenge the former does not necessarily waive the right to challenge the latter. Because the defendant timely raised the question of interim jury service prior to trial, he cannot be said to have waived his rights. The trial court erred in denying Jefferson's request to inquire about interim service.

The Government contends, however, that the district court is not obligated to make this mandatory inquiry concerning interim service unless the defendant first makes some showing that interim service has actually occurred. The district court suggested that counsel check the records in the clerk's office to see if interim service had occurred. But as counsel pointed out to the judge, he could not get all the information he needed from the clerk's records:

It is true it [information] is available whether or not they served, but what is not available to me [in the clerk's office] is how that would affect them sitting on this case. That is the inquiry I would like to make of them.

Jefferson's counsel's point is well taken. This is not a case like *Pinkney v. United States,* 380 F.2d 882 (5th Cir. 1967), *cert. denied,* 390 U.S. 908, 88 S.Ct. 831, 19 L.Ed.2d 876 (1968), where a check of the clerk's records would reveal all counsel needed to know. The records might show whether prior prosecutions had been for the same offense. In all likelihood, however, they would not establish whether Government witnesses or legal defenses were the same. As a result, voir dire would be necessary even if the records were checked. Given that need, the most economical approach would have been to use voir dire to make the initial inquiry concerning whether interim service had occurred. The district court should not, in this instance, have placed the burden of that inquiry on the defendant.

### III. *Conclusion*

■ Defendant timely raised the issue of interim service. The record does not indicate whether any interim jury service actually occurred, or, if it did, the nature of such service. Although defendant has submitted to this Court an affidavit from the district court clerk stating that two jurors had interim service, we cannot consider the affidavit, since it is not a part of the record below. In any event, the affidavit does not show whether the interim service was in a case "similar" to Jefferson's. We therefore remand this case to the district court for whatever proceedings are necessary for a determination of the controlling facts. If the district court finds that interim service occurred in "other cases similar in fact and in legal issue or in cases in which the same government witnesses" testified, as explicated in *Mutchler,* it should order that a new trial be held; otherwise, it should reaffirm the judgment of conviction.

REMANDED.